WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Slowik,<br><br>Plaintiff,<br><br>v.<br><br>Frank Moreno; Marshall Bliss; C. Smith; Cathy S. Grant; and DOES 1-10,<br><br>Defendants. | No. CV-12-01776-PHX-NVW<br><br>**ORDER** |

Before the Court is the Defendants' Motion to Dismiss/Motion for Summary Judgment (Doc. 39), Plaintiff's Response (Doc. 42), and the Reply (Doc. 47). For the following reasons, the Defendants' Motion for Summary Judgment will be granted.

**I.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate when the moving party carries its burden of demonstrating that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A material fact is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Once the moving party has carried its burden under Rule 56, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The fact are "viewed in the light most favorable to the

1  nonmoving party only if there is a genuine dispute as to those facts." *Scott v. Harris*, 550
2  U.S. 372, 380 (2007).  "Where the record taken as a whole could not lead a rational trier
3  of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*
4  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**II.    FACTS**

Plaintiff Michael Slowik was incarcerated at Federal Correctional Institution ("FCI") Phoenix where he was assigned the job of electrician in the Facilities Department. (DSOF ¶¶ 3-5). Slowik was assigned the job of electrician because he held himself out has having experience splicing powered cable wires. (Doc. 40, Exb. 6). Before taking the job, Slowik signed a form acknowledging that he participated in a prison training which covered various safety topics pertinent to his position, but he claims he was told to sign the form without actually participating in any orientation. (Doc. 40, Exb. 6).

Slowik was initially assigned the job of Grade Four Electrician but quickly worked his way up to Grade One, the top level in the prison. (DSOF ¶ 4). As a Grade One Electrician, he worked on electrical problems in the kitchen affecting the dishwasher, ovens, steam kettle, and helped install new ovens under the oversight of the Electrical Foreman. (DSOF ¶ 5). His job duties included assisting the lead electrician in installing and repairing electrical wiring, fixtures, and equipment. (Doc. 40, Exb. 6).  Slowik also served as the emergency electrician on-call during weekends. (Doc. 40, Exb. 6).

Defendant Fred Moreno is a Facilities Manager at FCI Phoenix and has supervisory responsibility for the Facilities Department and for all repairs performed at FCI Phoenix. (DSOF ¶ 1). Defendant Marshall Bliss is now retired, but worked at FCI Phoenix as a Maintenance Foreman whose duties included maintaining the food service equipment. (DSOF ¶ 2).

On Saturday September, 25, 2010, Slowik advised Moreno that he had attempted to reset circuit breakers in the kitchen area of food services but they would not reset. (Doc. 40, Exb. 6). Moreno told Slowik that Victor Martinez, the institution's electrician,

1  would address the problem the following day.  (DSOF ¶ 7).  Maritinez was not available
2  the next day and after Bliss approached Slowik about the broken electric panel, Slowik
3  offered to see if he could figure out what was wrong.  (Doc. 40, Exb. 6).  Bliss escorted
4  Slowik and another inmate to the power source behind the building.  (DSOF ¶ 9).  The
5  main power feed to the electrical panel was shut off, and Slowik located two blown fuses.
6  (DSOF ¶ 10).  Slowik then returned to the food service area and took the front cover off
7  the electrical panel to check for a short.  (DSOF ¶ 12).  Slowik found no shorts and
8  turned off all the breakers.  (DSOF ¶ 12).

9  Bliss then escorted the inmates back to the power source behind the building
10 where Slowik replaced the blown fuses and turned the unit back on.  (Doc. 40, Exb. 6).
11 The group then returned to the kitchen so Slowik could flip the circuit breakers back on
12 one at a time.  (Doc. 40, Exb. 6).  As Slowik flipped the last breaker, it flashed due to a
13 ground short that Slowik had missed.  (Doc. 40, Exb. 1).  Later reports suggest Slowik
14 forgot to put the cover back over the flash panel in the kitchens, but Slowik stated that
15 mistake was not what caused the accident and that the explosion might have been much
16 worse if the cover had been on.  (Doc. 40, Exb. 6).

17 The explosion injured Slowik, the other inmate, and Officer Bliss.  (Doc. 40-7, Pg.
18 58).  When asked to describe the incident, Slowik said, "There's no way that anybody – it
19 – it was just – there's no way that could have prevented from happening the way it
20 happened." (Doc. 40, Exb. 6).  The two injured inmates were immediately taken to the
21 institution's Health Services Department for medical treatment and were later transferred
22 to a local hospital.  (DSOF ¶ 20).  Slowik was then transferred to Maricopa County Burn
23 Center.  (DSOF ¶ 21).  He returned to FCI Phoenix on October 13, 2010.  (DSOF ¶ 20).

24 After returning to the prison, Slowik filed an administrative grievance, claiming he
25 was forced to work on a high voltage electric panel by Officer Bliss and was not properly
26 instructed on the job he was assigned to perform.  (DSOF ¶ 22).  He was awarded a
27 monthly sum of $58.65, based on a 7% impairment to his whole body under the Inmate
28 Accident Compensation Act.  (DSOF ¶ 29).  Slowik believed his monthly sum should

have included more money to account for the overtime he worked before he was injured and that Officer Moreno lowered the award to spite him. (Doc. 40, Exb. 6). Slowik appealed his award but lost. (DSOF ¶ 29).

Slowik then filed this action under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Defendants Frank Moreno and Marshal Bliss, among others, violated his constitutional rights when he suffered injuries from a work-related incident while incarcerated at FCI Phoenix. (Doc. 16 ¶¶ 40-50). He alleges violations of his Fifth Amendment right to due process and Eighth Amendment right to be free from serious risk of harm because he was injured while being forced to work on "energized circuits." (*Id.* at ¶ ¶ 42-45). Slowik also alleges two named defendants, who have been dismissed from this action, and other John Doe defendants violated his Eighth Amendment rights when they chained, shackled and handcuffed him to his hospital bed after he was injured. (*Id.* at ¶¶ 51-58). Finally, Slowik alleges that Defendant Moreno violated his First and Fifth Amendment rights, depriving him of his freedom of speech and retaliating against him for filing an administrative grievance. (*Id.* at ¶¶ 59-66).

### III. LEGAL ANALYSIS

#### A. *Bivens* Claims against Federal Defendants

Victims whose constitutional rights are infringed on by a federal officer, employee, or agent have a right to recover damages against that officer, "despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980). That right extends to federal prisoners, who may bring an action against a federal prison employee under *Bivens*. *See Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1104 (9th Cir. 2004) (holding that to the extent the plaintiff "sought recovery from individual employees of the Corrections corporation, the case had to be brought as a *Bivens* action") (citations omitted). "The basis of a *Bivens* action is some illegal or inappropriate conduct on the part of a federal official or agent that violates a clearly established constitutional right." *Balser v. Dep't. of Justice*, 327 F.3d 903, 909 (9th Cir.

2003).

### 1. Violation of Fifth and Eighth Amendment Rights by Defendants Moreno and Bliss

Plaintiff argues his Fifth and Eighth Amendment right to be "free from serious injury or harm or risk of serious harm" were violated when he was ordered to work on and repair an energized high-voltage circuit. (Doc. 16, ¶¶ 41-45). The rights Plaintiff asserts are not lodged in the Fifth Amendment and are more accurately pled as violations of the Eighth Amendment. To prevail on a claim challenging prison conditions under the Eighth Amendment, Plaintiff must prove that his injury was caused by an officer's "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297, 302 (1991).[1] Deliberate indifference "requires more than ordinary lack of due care for the prisoner's interests or safety," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (internal citations and quotations omitted). A prison official cannot be liable

> under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards and excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

Slowik claims he suffered extensive burns because he was forced to work on a high-voltage circuit he was not qualified to repair. To survive this Motion for Summary Judgment, he must show there is at least a question of fact as to whether Defendants Bliss and Moreno acted with "deliberate indifference" to his health and safety when assigning him to work on the circuit. To support his case, Slowik asserts that the Defendants should have known forcing him to work on the circuit posed a serious risk to his health

---

[1] Because "[a]ctions under § 1983 and those under *Bivens* are the same save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*," cases discussing § 1983 clams apply to *Bivens* claims. *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991).

- 5 -

1 and safety because both Defendants were aware that he had never properly trained as an
2 electrician in the prison, only served as an assistant to the head electrician, and was not
3 permitted to work on energized circuits. (PSOF ¶¶ C-H).[2]

4 Slowik was assigned to the electric shop in the prison because he worked as a cable splicer on powered cables before he was incarcerated. (Doc. 40, Exb. 6). Once he was established in the electric shop, he quickly worked his way up to the highest level of electrician, where his job duties included installing and repairing wiring, electrical fixtures, apparatus and control equipment, and checking for compliance with the National Electrical Code. (DSOF ¶ 5). Slowik's deposition demonstrates a working knowledge of the duties outlined above. (Doc. 40, Exb. 6). It also demonstrates that he understood the necessary safety measures when repairing a power source like the one that injured him. (Doc. 40, Exb. 6) (demonstrating basic knowledge of lock-out/tag-out procedures, National Electrical Code, and electrical repairs).

Although Slowik repeatedly asserts he was injured while working on an energized, high-voltage circuit, his deposition verifies that the power was actually off while he was working on the circuit and exhibits submitted by Defendant show the circuit was actually a low-voltage one. (Doc. 40, Exb. 6; DSOF ¶¶ 23-24). Additionally, nothing suggests the Defendants had any reason to know that replacing the circuit breakers would place Slowik at substantial risk of serious harm. Slowik's own deposition demonstrates how his words, actions, and position as a Grade One Electrician would have reasonably led the Defendants to believe he was capable of handling the task assigned to him. (Doc. 40, Exb. 6). That the Defendants did not anticipate any harm to Slowik is further evidenced by Defendant Bliss standing so close to Slowik at the time of the explosion that he also suffered burns.

---

[2] Plaintiff disputes many of the Defendants' facts in his Statement of Facts and his unsigned affidavit. Many of these conflicts are resolved by Plaintiff's deposition. When Plaintiff's Statement of Facts and affidavit conflict with his deposition, the facts assumed true on this Motion for Summary Judgment are drawn from his deposition. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (stating that a party cannot create an issue of fact by submitting an affidavit that contradicts prior deposition testimony).

The incident appears to have occurred from a ground short in the circuit. No similar event had ever occurred in the prison before. Assigning an inmate to a job that terminates in an unpredictable accident does not demonstrate the deliberate indifference necessary to succeed on an Eighth Amendment claim. *See Wilson*, 501 U.S. at 300 (noting that, "for instance, that if a prison boiler malfunctions accidentally during a cold winter, an inmate would have no basis for an Eighth Amendment claim, even if he suffers objectively significant harm"). Although Slowik's injuries were unfortunate, they were not inflicted by the officers' deliberate indifference.

The Defendants have carried their burden of proving there is no material question of fact regarding whether they knew of, and then disregarded, a serious risk to Slowik's health and safety. Summary judgment will be granted to Defendants Bliss and Moreno on this count.

### 2. Violation of Eighth Amendment Rights by Smith, Grant, & John Does

Because Defendants Smith and Grant were dismissed from this action on March 22, 2013, (Doc. 24), this count proceeds against only John Doe defendants. Although the use of John Doe defendants is usually disfavored, a plaintiff must be given a chance to identify John Doe defendants through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642-43 (9th Cir. 1980). Slowik claims the John Doe defendants named in his second count are "retired and/or avoiding service" and that the named defendants have been unwilling to provide any means of locating the John Doe defendants. (Doc. 42).

But Slowik has been given ample opportunity to conduct discovery in this action. He has received the Defendants' Initial and Supplemental Disclosure Statements, two sets of responses to his interrogatories and request for admissions, and chosen not to depose Defendants Bliss or Moreno. (Docs. 27-28, 34-36). Additionally, Slowik has made no allegations that the John Doe defendants remain unidentified because the named defendants' responses to his discovery requests were deficient. Slowik has been given a sufficient opportunity to identify the unnamed defendants. Accordingly, the John Doe defendants are dismissed from this action. It follows that the second count is also dismissed, as all defendants named in it have been dropped as parities to this action.

### 3. First Amendment Retaliation Against Defendant Moreno

Slowik contends that that Officers Smith, Grant, Moreno, and John Does retaliated against him for pursuing an administrative remedy for his injuries. (Doc. 16). Smith, Grant, and the John Does, however, have been dismissed from this action, leaving Officer Moreno as the only remaining defendant under this count. Accordingly, only Officer Moreno's actions can be considered when deciding whether Slowik's First Amendment rights were violated.

Inmates have a First Amendment right to file prison grievances and may file a claim if a public officer retaliates against them for exercising that right. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). For a claim for First Amendment retaliation, a prisoner must show: (1) that a state actor took an adverse action against the inmate (2) because of (3) that prisoners' protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Id*. at 568.

Slowik contends Officer Moreno attempted to quash or chill his right to file a prison grievance. (Doc. 16). He asserts that Moreno issued him a disciplinary write-up stating that he had failed to put the cover on the electrical panel when it blew up. (Doc. 40, Exb. 6). This write-up, however, was signed nearly five months after Slowik had filed his administrative claim and was titled "Injury – Lost – Time Follow Up." (Doc. 40, Exb. 1). The document verifies that Slowik's injuries were the result of a work-related incident and is not disciplinary in nature. (Doc. 40, Exb. 1).

Slowik also contends that when he applied for a subsidy to make up for lost wages in prison due to injuries, Officer Moreno told him he would make sure he didn't have to pay Slowik any more money than he had to. (Doc. 40, Exb. 6). Slowik was upset because his monetary award did not include additional funds to account for the overtime he was used to working and believes the lowered compensation was due to Officer Moreno's actions. (Doc. 40, Exb. 6). He appealed his monetary award within the prison and lost. (DSOF ¶ 28).

Neither of the above allegations support a First Amendment retaliation claim. The

first, an incident report, could not be construed as an adverse action and had no impact on Slowik's right or ability to file an administrative appeal. As for the second, although Moreno's alleged words may have been negative, Slowik still received the compensation he was entitled to. He may have hoped to be granted extra, but the failure of the committee to award him more than he was entitled to based on his ordinary wages does not constitute an adverse action. Slowik was also able to appeal the initial decision, showing that Moreno's actions did not chill the exercise of his First Amendment rights.

Slowik alleges additional instances of retaliation under this count, but none were perpetrated by Moreno. He admits that Officer Moreno was not present at the time he felt ridiculed in the hospital by prison guards, (Doc. 40, Exb. 6), and the incident report he contends was filed purely to harass him was signed by Officer Bliss, not Moreno. (Doc. 40, Exb. 8). Because Slowik has alleged no way to attribute the actions to Officer Moreno, they are not considered under this count. Accordingly, Defendant Moreno has carried his burden of showing there is no material question of fact surrounding whether his actions chilled Slowik's legitimate exercise of his First Amendment rights. Summary judgment will be granted for Officer Moreno on this count.

### 4.  Administrative Exhaustion of Claims Defendant Moreno

The Prisoner Litigation Reform Act ("PLRA") requires that a prisoner filing a *Bivens* action exhaust all available administrative remedies prior to filing a civil action in federal court. *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citing 42 U.S.C. § 1997). This exhaustion requirement applies to all civil suits filed by prisoners about any aspect of prison life, regardless of the remedies sought. *Booth v. Churner*, 532 U.S. 731, 741 (2001). It is undisputed that Slowik did not mention Officer Moreno in any of his requests for administrative remedies. (DSOF ¶ 30, PSOF ¶ 30). But "exhaustion [under the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the [administrative] grievances." *Jones v. Bock*, 549 U.S. 199, 219 (2007). Because summary judgment will be granted for Defendants on the merits of this action, we do not decide whether Slowik has properly exhausted his administrative remedies with respect to Officer Moreno.

### B. Other Issues Raised

Slowik claims the Defendants' deposition excerpts are not admissible because a copy of the reporter's certification was filed after the Motion for Summary Judgment was filed. Slowik misinterprets Federal Rule of Civil Procedure 30(f)(1). Rule 30(f)(1) only requires the certificate to accompany the final copy of a deposition. Nothing in the rule requires the deposition to be certified at the time a motion is filed. Furthermore, not only does Slowik rely on the same depositions he claims are inadmissible, the delay in certification was because Slowik failed to appear to review and sign the deposition in a timely manner. (Doc. 41-1). Defendants properly submitted the reporter's certification as soon as it was available, and Slowik has not demonstrated that he was in any way prejudiced by this delay.

Slowik also claims that the Defendants' exhibits and declarations are not properly authenticated. (Doc. 42). All of the Defendants' documents were either properly signed under penalty of perjury pursuant to 28 U.S.C. § 1746, as permitted by Federal Rule of Evidence 901(b)(10), authenticated by Slowik is his deposition, authenticated in the Defendants' depositions, or provided to the Defendants by Slowik. (Doc. 27). Accordingly, Slowik's objections to the Defendants' exhibits and declarations are unfounded.

IT IS THEREFORE ORDERED that the Defendants' Motion for Summary Judgment (Doc. 39) is granted.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of the Defendants and against Plaintiff and that Plaintiff take nothing. The Clerk shall terminate this case.

Dated this 5th day of December, 2013.

_____
Neil V. Wake
United States District Judge